Martin, J.
The plaintiff claims certain negroes, under a marriage contract, and complains that the defendant has taken them from her, and detains them, without right.
The defendant pleads the general issue; that if the plaintiff ever had any title to the negroes, she has forfeited it, by selling them contrary to law. That she never was married to the man mentioned in the marriage contract, as her future husband. That the negroes are the property of the defendant, by descent from his father, and by purchase.
There was judgment in favor of the plaintiff, for the return of the negroes, and $50 damages ; and the defendant appealed.
The statement of facts shews, that—
E. Howden deposed, that he knew Susan Howden, one of the subscribing witnesses to the marriage contract. She was his mother, and died in 1801, about two years after its date. He knew also J. Blunt, the other witness, who was old at the time, and he does not know whether he be alive or dead; he *409 never was in this state to the witness’s knowlege. He has seen his mother write often, and believes the signature S. Howden, at the foot of the contract, to be hers. He has seen G. Wyche, the plaintiff’s husband write, and believes the signature, G. Wyche, at the foot of the instrument, to be his. He knows the negroes, in the petition, are those named in the contract, and they are now in the defendant’s possession. The plaintiff, or her husband, had possession of them since he married her, till about the commencement of the suit. Soon after the signature of the marriage contract, G. Wyche went to Savannah, and brought back a paper which the witness’s father read in his presence, and said it was a license. He was not present when G. Wyche and the plaintiff were married; they always passed for man and wife. They had no children. G. Wyche died on the return of the militia from New-Orleans. The witness understood the negroes belonged to G. Wyche’s father. They were sold at public sale; the witness saw the advertisement. G. Wyche brought them home the day they were to be sold. The witness was not present at the sale, and cannot swear they were sold. He *410 is thirty years of age; cannot well read writing. He cannot do much more than write his own name. His mother wrote often, as his father kept a tavern, and she kept the accounts when he was absent.
The witness being asked to point out his mother’s signature, put his finger on it.
He added, that he knew A. Jackson (another subscribing witness, by whose oath the marriage was proven before it was admitted to be recorded) lived in Georgia about the time, but he does not know where he lives now. He never knew of any conveyance of the negroes to G. Wyche, nor does he know that he and the defendant were brothers. They called themselves so, and were so believed to be.
Burn deposed, that he heard the plaintiff say, that Luke, one of the negroes in the marriage contract, now belonging toC. Adams, was sold to Turner and Linton, to pay a debt of her husband, which she was induced to assume. That some advantage was taken of her. One or two had been sold in that way. Some of the others had been given up to the defendant, in 1815, and the others in 1817. She acknowleged him to be her husband's *411 brother; and that they had a sister or brother. He understood that she had once conveyed the negroes to Prother, to prevent the defendant from getting them. Both parties admitted they had been given to the defendant, under a verbal agreement, that he would do with them as he saw fit, and furnish the plaintiff a decent support for life. They appeared very friendly. She said she expected he would get part of the property— it would be his at her death. At all events, all she wanted was a decent support for life. She lived at his house after the agreement. The negroes were taxed as the defendant’s. The defendant told the witness, the plaintiff would not live at life house. She had violated her agreement, and he was no longer bound.— He gave her credit in the stores in town, and with the witness, without limitation; he paid him, and said he was still willing to support her.
Palford deposed, he heard G. Wyche say, he had been in hell since he married the plaintiff. She had got some negroes other father’s estate, before he had come from Georgia. He said, he had a brother, and she did not deny it. She said, two of the negroes had *412 been sold with her consent. She had been induced to assume a debt of her husband. She had been entrapped. G. Wyche died in the spring of 1815.
M'Carrol, a witness of the defendant, deposed, the plaintiff told him she had given the property to the defendant, under an agreement for her support. That the negroes came from the estate of her father, at whose death her husband administered on the estate, had the negroes sold, and bought them. She was then living at the defendant’s.
Welsh and Gay deposed, that the defendant had Lewis, one of the negroes, in Natchitoches, in 1817 and 1819; and sent him to Catahoula. The negro was considered as his property.
Prother deposed, he had once a conveyance from the plaintiff for four of the negroes. Two remained with him afterwards. He gave up the two on the compromise between the plaintiff and defendant. His quit claim for the four negroes was given up by the defendant. He wrote to the parish judge to cancel the plaintiff’s coveyance. He left them as he found them. The defendant said, he considered himself the owner of the negroes, *413 and had used deception to get possession of them, and had told the plaintiff so. He said he had a sister. He had conveyed and delivered four negroes to the defendant, at the plaintiff’s request, and the conveyance was afterwards returned to him by the defendant, who said he had right to them as hers. The plaintiff moved into the territory of Orleans, with her husband, in February, 1809.
Cox deposed, that he heard the plaintiff, in the defendant's absence, say, she wished he might come home, she wanted to give up the negroes to him. He was heir to the property, and she was tired of keeping it. This was before the agreement.
Clarkson deposed, that since the commencement of this suit, plaintiff told him she wished to be placed in her former situation; all she wanted was a decent support. The defendant offered to build her a house and maintain her. She left him of her own accord. She told the witness the defendant had treated her well. She authorised the witness to tell the defendant, she was willing to accept the same terms. The defendant paid the taxes till 1816.
Ussey deposed, that the defendant is G. *414 Wyche's brother. The negroes, Luke, Mary and Charles, part of the property sold, are worth $3000.
The defendant’s counsel objected to the reading the marriage contract, as not sufficiently proven, and took a bill of exceptions to the opinion of the district judge over-ruling the objection.
They urge, that the witness cannot possibly recognise his mother's signature to the instrument, as she had been dead long ago, and he admits he does not well read writing. An instrument is produced, in which the witness's mother made her cross, or mark, instead of signing. This, in my opinion, may have been the case in the latter part of her life; and happens, at any time, to persons to whom writing is not familiar or easy.
I think the judge did not err. The witness swears, he recognises the signature, and he has often seen his mother write. The alleged improbability of his knowing the signature, must yield to his direct assertion, that he does, when there is no material circumstance that renders his deposition suspicious. Particularly as the deed derives appearance of genuineness from the certificate *415 of its probate and record in Georgia; and if it was a forgery, the signature of G. Wyche, who lived and lately died near the place of trial, being supposed to be well known there, the imposition might have been easily detected.
The deed being proven, the possession of G. Wyche and the plaintiff, since his death, establishes her tight to the slaves primâ facie. No forfeiture of this right is shewn. The actual celebration of the marriage ceremony is not required to be proven, in a case like this. The subsequent cohabitation as man and wife, and common reputation while G. Wyche lived, suffice. There is no evidence that the slaves became the property of the defendant, by descent, from his father. The evidence rather shows, that they were the property of G. Wyche, the brother of the defendant. Nothing shews, that in Georgia, children are forced heirs; that the slaves made part of the defendant's share of the estate; from the long silence of the defendant, the presumption its very strong against him, and prescription appears to have destroyed his title.
No evidence of a purchase is produced.
The argument, that the defendant should have the negroes, and support, the plaintiff, *416 appears lo have been waved and abandoned by the parties.
Bullard for the plaintiff, Thomas and Wilson for the defendant.
The judgment ought to be affirmed with costs.